Case 3:20-cv-00386   Document 27   Filed on 10/07/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
October 07, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:20-cv-386

SUHANTHY MAHASIVAM, *PLAINTIFF*,

v.

AMERICAN GENERAL LIFE INSURANCE COMPANY, ET AL., *DEFENDANTS*.

**MEMORANDUM OPINION AND ORDER**

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendants' motion to compel arbitration and stay or dismiss proceedings. Dkt. 19. Having carefully considered the motion, response, reply, objections, the record, and the applicable law, and for the reasons discussed below, the court grants the motion to compel arbitration and dismisses the proceedings without prejudice.

**I.   BACKGROUND**

The plaintiff, Suhanthy Mahasivam, sued American International Group, Inc. (AIG) alleging age and gender discrimination under the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964. Dkt. 22 at 1. Soon thereafter, Mahasivam amended her

complaint to add defendant American General Life Insurance Company (AGLI), her employer at the time of termination and a subsidiary of AIG. *Id.* On April 13, 2021, the defendants moved to compel arbitration and stay proceedings. Dkt. 19. They maintain Mahasivam entered into an enforceable arbitration agreement in December of 2005 and reaffirmed her intent to enter an arbitration agreement on subsequent occasions in 2006, 2012, 2013, and 2017. *Id.* at 1–4. Mahasivam disputes entering into an enforceable arbitration agreement. Dkt. 22 at 2–4.

## II. LEGAL STANDARD

The Federal Arbitration Act provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. This permits a "party to file a motion to compel arbitration when an opposing party has failed, neglected, or refused to comply with an arbitration agreement." *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (citations omitted).

To determine whether to enforce an arbitration agreement, the court first determines whether there is a valid agreement to arbitrate and then

whether the subject dispute falls within the scope of that agreement. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). The court must compel arbitration if both elements are satisfied unless there is a federal statute or policy to the contrary. *See Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

Two important considerations guide the court's determination of validity as to the first step. First, federal courts do not consider general challenges to the validity of the entire contract at this stage, only those challenges specifically pertaining to an arbitration clause. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). This is because an arbitration agreement is severable from the underlying contract under Section Two of the Federal Arbitration Act. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (citation omitted). Accordingly, a court at this stage may address only a challenge directed at the validity of a specific agreement to arbitrate. And if the court determines that a valid arbitration agreement exists, any remaining arguments that target the validity of the contract as a whole are questions for the arbitrator. *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.*, 853 F.3d 804, 814 (5th Cir. 2017).

Second, courts must distinguish between arguments attacking the validity or enforceability of a contract—which must be heard by the arbitrator—from arguments challenging the formation or existence of a contract. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018). Questions of contract formation and existence are for the court to decide. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).

In deciding both the validity of an arbitration agreement and its scope, courts apply ordinary principles of state contract law. *Kubala*, 830 F.3d at 202 (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citation omitted).

## III. ANALYSIS

Mahasivam filled out and signed an Employment Application for American General Life Companies[1] in December of 2005, to begin working in their Actuarial Student Program. Dkt. 19-1 at 8. This Employment Application contained a notice within the section entitled "APPLICANT'S UNDERSTANDINGS AND AUTHORIZATIONS," providing that:

---

[1] American General Life Companies eventually merged with and into AGLI. Dkt. 19 at 4.

> Certain American International Companies have adopted **Employee Dispute Resolution ("EDR")** programs, which include both informal and formal means such as **arbitration, as the sole method of resolving most employment-related disputes**. Seeking or accepting employment with American General Life Companies . . . means that I agree to resolve employment-related claims against the company or another employee through this process instead of through the courts. . . .The details of the applicable EDR program, including any limitations or exclusions are furnished to each employee and are available to applicants upon request. I agree that if I either apply for or accept employment with American General Life Companies . . . **all covered claims and disputes that arise either as part of the hiring process or during employment**, if I am hired, will be **subject to the terms of the applicable EDR program**.

*Id.* at 10 (emphasis added). This signed three-page Employment Application, in which the EDR understanding was the single longest and detailed entry, put Mahasivam on notice that if she applied for or accepted employment with those listed AIG entities, then she was agreeing to the arbitration provision.

Mahasivam accepted employment with American General Life Companies on January 2, 2006, by signing the Offer Letter which also provided an arbitration notice:

> If at any time there is a dispute between you and AIG American General,[2] during or after employment, we ask that you come directly to us to resolve the matter. In the event you and AIG American General are unable to reach a mutual agreement, and the dispute involves a **legally protected right**, you or AIG

---

[2] AIG American General is a group name for certain subsidiaries of AIG, one of which was American General Life Companies, Mahasivam's former employer. Dkt. 19 at 3 n.2.

> American General may elect to pursue mediation and/or arbitration before the trained professionals of the **American Arbitration Association**. Employees are still free to file charges of discrimination with the EEOC or other governmental agencies; **however disputes which otherwise would have been referred to the court system are resolved through the EDR process instead**. Additional information on the AIG American General's EDR Program, including benefits available to you under the Legal Consultation Plan will be provided to you at New Employee Orientation or upon your request.

Dkt. 19-1 at 13 (emphasis added). If Mahasivam had a reasonable doubt about the EDR provision in the Employment Application, the plain text of the Offer Letter shows that she was subject to compulsory arbitration in lieu of court proceedings. Mahasivam's arguments to the contrary are unpersuasive.

When Mahasivam accepted employment by signing and returning the Offer Letter, she objectively manifested assent to the express conditions of employment, including the EDR Program described in the letter. *See Walker v. Tao Operating, L.L.C.*, 2014 U.S. Dist. LEXIS 129518, at \*20 (E.D. Tex. Aug. 14, 2014) ("Absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract, unless he was prevented from doing so by trick or artifice"); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134 n.37 (Tex. 2004) ("the general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an

instrument before signing it is not a ground for avoiding it") (citation omitted).

At least two additional notice events occurred during this time: (1) in early 2012, Mahasivam's employer American General Life Companies merged with and into AGLI, a part of AIG's Life and Retirement Division (AIG L&R), resulting in emails to affected employees in late 2012 that AIG L&R was extending its EDR program to all employees; and (2) Mahasivam successfully completed AIG L&R's EDR Program Overview in 2017. Dkt. 19-1 at 4–5. These events were sufficient to provide further notice to Mahasivam that she and her employer were still subject to a binding arbitration agreement. Accordingly, the court need not reach the question of whether defendants' Employee Handbook on the AIG Intranet provided additional, expanded notice of the EDR Program. Dkt. 19 at 4.

Moreover, any confusion over whether she was still under binding arbitration when her employer merged with AGLI was eliminated by both the AIG L&R emails and the required, certificated training. The court finds that the EDR Program provisions within the Employment Application and the Offer Letter, as well as AIG L&R's EDR Program overview training, signed by Mahasivam constitute a valid agreement to arbitrate under the FAA.

Next, the court must determine whether the dispute falls within the scope of the arbitration provision. The court finds that the present dispute—alleged age and gender discrimination—falls within the scope of the arbitration provision as described in AIG L&R's EDR Program overview training, the Offer Letter, and the Employment Application. Dkt. 19-1 at 38, 13, 10 (covering "legally protected rights"). Age and gender discrimination under the ADEA and Title VII of the Civil Rights Act of 1964, respectively, qualify. *See, generally, Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (holding that a claim under the ADEA could be subjected to compulsory arbitration); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991) ("Because both the ADEA and Title VII are similar civil rights statutes, and both are enforced by the EEOC . . . we have little trouble concluding that Title VII claims can be subjected to compulsory arbitration").

Under § 3 of the FAA, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration." *Alford*, 975 F.2d at 1164. The Fifth Circuit has interpreted this language to mean that a district court cannot deny a stay when one is properly requested and to not "limit dismissal of a case in the proper circumstances." *Id.* "If all of the issues raised before

the district court are arbitrable, dismissal is appropriate." *Randle v. Metro. Transit Auth. of Harris Cty.*, No. H-18-1770, 2018 U.S. Dist. LEXIS 169033, at *32 (S.D. Tex. Oct. 1, 2018). Because all of Mahasivam's claims are subject to arbitration, dismissal is proper.

Accordingly, the court must compel proceedings to arbitration and dismiss this action.

\* \* \*

For the reasons above, the court grants the defendants' motion to compel arbitration and dismisses the case without prejudice.[3]

Signed on Galveston Island this 7th day of October, 2021.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

[3] The court also overrules Mahasivam's objections to the defendants' motion-to-compel-arbitration evidence. Dkt. 24.